IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2024

## LORI JEAN MCKEE KELLY v. CHRISTOPHER ROBERTS KELLY

**Appeal from the Circuit Court for Davidson County**
**No. 17D-1311       Stanley Kweller, Judge**[1]
_____

**No. M2023-00598-COA-R3-CV**
_____

In this divorce, the trial court sanctioned Husband for failing to participate in discovery. After a final hearing at which Husband failed to appear, the trial court entered a final decree of divorce that awarded Wife monetary judgments and alimony, divided the marital property, adopted Wife's proposed parenting plan, and set child support. Husband filed a motion to set aside, alter, or amend the final decree, which the trial court denied. On appeal, Husband challenges the sanctions and complains that the trial court failed to consider the statutory best interest factors when fashioning the permanent parenting plan. Although the trial court's factual findings concerning the children's best interest are deficient, we can "soldier on" by conducting a de novo review of the record to determine where the preponderance of the evidence lies. After that review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Paul W. Moser and Lisa P. Webb, Brentwood, Tennessee, for the appellant, Christopher Roberts Kelly.

L. Jeffery Payne, Murfreesboro, Tennessee, for the appellee, Lori Jean McKee Kelly.

---

[1] Judge Kweller heard post-trial motions filed after the entry of the final decree of divorce. The late Judge Philip E. Smith presided over much of the case, including the final hearing. Chancellor Laurence McMillian, Jr., sitting specially, signed the final decree of divorce. *See* TENN. R. CIV. P. 63.

# OPINION

## I.

### A.

After approximately ten years of marriage, Lori Jean McKee Kelly ("Wife") filed for legal separation from Christopher Roberts Kelly ("Husband"). He responded with a counter-complaint for divorce, which he nonsuited during an attempt at reconciliation. When reconciliation failed, Wife amended her complaint for legal separation to seek a divorce.

Early in the case, Husband and Wife reached an agreement regarding the marital home and family support. Under an agreed order, Wife would have exclusive possession of the marital home pending the final hearing, and Husband would pay Wife $4,500 in *pendente lite* support each month. Husband would also "continue paying the expenses that have been historically paid by [him]," including the mortgage on the marital home, Wife's fuel card, tuition and aftercare for their oldest child, and life insurance. And Husband would pay for counseling for the parties' three minor children.

Husband did not, however, respond to Wife's discovery requests. Wife claimed that she was not informed of their financial situation during the marriage. She believed that Husband, an attorney, was receiving substantial sums of money. So she moved the court to compel him to respond to discovery and to provide an accounting.

As would later become a pattern, Husband failed to appear at the hearing on Wife's motions. The court granted both the motion to compel and the request for an accounting.

### B.

Several months later, Wife filed her first petition for civil contempt. According to Wife, Husband was not making payments as directed by the agreed order. He still had not responded to any discovery. Nor had he complied with the order to provide an accounting.

Husband retained a new attorney, who responded by arguing that Wife's contempt petition was "defective" because the agreed order to which it referred was "not in existence." Husband also offered a variety of excuses for his lack of compliance: his former business partners had sued him, he had filed for Chapter 11 bankruptcy, he had been in inpatient treatment for depression, and he "did not earn a paycheck" for several months because of a move from Tennessee to Oklahoma.

The hearing on the contempt petition resulted in a second agreed order, which addressed the impact of Husband's bankruptcy filing on his obligations under the original

2

agreed order. The parties agreed Husband would pay the arrearages he owed for temporary support, the oldest child's school tuition, the children's counseling, and the fuel card. They also agreed that Wife would be awarded the marital home, and Husband would resume paying the home mortgage once authorized to do so by the bankruptcy court. He "anticipate[d] a final order" in his bankruptcy case within the next two months. Before then, he would make a $50,000 payment to Wife, and by the end of the year, he would make an additional $250,000 payment to her, both to be considered a division of marital property.

Ultimately, Husband's Chapter 11 bankruptcy was dismissed. Still, Husband failed to comply with the agreed orders or the order compelling responses to discovery and for an accounting. Wife filed a second petition for civil contempt and served him with a subpoena for various financial records. After that, Husband filed a Chapter 7 bankruptcy.

Before the second petition for contempt could be heard, Wife filed a third contempt petition. She alleged that Husband's continued failure to pay the mortgage caused the marital home to go into foreclosure. Husband still had not paid his oldest child's tuition. He was not paying family support as ordered. He had not made either of the lump sum payments required by the second agreed order. He had not provided an accounting. And almost two years after the original response deadline, he had not responded to discovery. In reply, Husband asked the court to vacate the second agreed order based on "confusion mistake . . . in reaching the agreement that was memorialized."

Again, Husband was not present at the hearing on Wife's contempt petitions. The court permitted his attorney, who had moved to withdraw the day before the hearing, to withdraw from the case. And, "[a]s a result of [Husband's] failure to appear," the court "ordered that a body attachment issue and that an appearance bond of $100,000 be set." Husband later asked the court to set aside the body attachment, purporting to have been "under the impression that the . . . hearing . . . would be rescheduled due to the withdrawal of his former counsel." The court lowered the bond to $25,000 but denied Husband's motion.

## C.

Over two years after seeking a divorce, Wife moved for a default judgment as a discovery sanction under Tennessee Rule of Civil Procedure 37.02. By that time, Husband had provided some discovery responses, though his responses were "evasive and incomplete." He persisted in his refusal "to provid[e] basic financial information, such as bank statements." Based on bank statements, which Wife was able to access through other means, she suspected Husband was "living an exorbitant lifestyle," including joining an expensive country club, going on numerous vacations, and paying for intimate encounters.

3

Husband's final court appearance was at the hearing on Wife's motion for default. Based on Husband's response and testimony, the court granted him the opportunity to fully respond to discovery and complete the accounting. The order provided that, "[i]f the Husband is unable to provide a full accounting of the funds, the Court will presume the Husband dissipated the marital estate." And, "[i]f the Husband has not substantially complied with the present order, the Court will strike the Husband's pleading pursuant to Tenn. R. Civ. P. 37." It continued the hearing on Wife's request for a default until after the final deadline for Husband to complete the ordered tasks.

Husband did not fully complete discovery or give an accounting. Instead, he filed a document he called "[his] affidavit of accounting" and four exhibits showing limited financial information.

Husband was not present at the hearing at which the court granted Wife a default judgment. For Husband's "noncompliance with prior orders," the court also struck his pleadings and prohibited him "from introducing any evidence at the final hearing with respect to the Wife's Petition for Civil Contempt and Complaint for Divorce."

Husband also failed to appear at the final hearing. There, Wife testified about matters regarding the litigation, the children, and the parties' assets and debts. Based on her testimony and evidence, the court awarded her several monetary judgments resulting from Husband's failure to comply with court orders. It also equitably divided the marital property and debts, awarded alimony, adopted a permanent parenting plan, and set child support for the minor children.

Within the month after entry of the final decree, Husband moved "to Set Aside, Alter, or Amend its Final Decree of Divorce" and "[t]o Set Aside the default judgment and body attachment." Husband did not appear for the hearing on his motion. According to his counsel, Husband "could not make the trip, said he had to work." Finding nothing to support the allegations in Husband's motion, the court denied the motion.

## II.

Husband raises four issues on appeal.[2] Two of his issues, which we address first, relate to the sanctions for his failure to comply with orders to provide discovery. Next, he

---

[2] Wife argues that Husband's brief does not comply with Rule 27 of the Tennessee Rules of Appellate Procedure or Rule 6 of the rules of this Court. *See* TENN. R. APP. P. 27(a) (listing the required contents of an appellant's brief); TENN. CT. APP. R. 6(a) (listing the required contents in appellate arguments). So she contends that we should dismiss Husband's appeal or, in the alternative, consider his issues waived. While we agree that Husband's brief is noncompliant in several respects, we exercise our discretion to consider the merits of his appeal. *See Greer v. Anderson*, 259 S.W.2d 550, 550 (Tenn. Ct. App. 1953) (recognizing the Court's preference to decide appeals on their merits).

4

argues the trial court erred in failing to set aside the default and final divorce decree. Finally, he argues the trial court abused its discretion in fashioning the parenting plan.

A.

The trial court sanctioned Husband by granting Wife a default judgment, striking Husband's pleadings, and preventing Husband from introducing evidence at the final hearing. Husband contends that these sanctions were outside the permissible scope of Tennessee Rule of Civil Procedure 37.02, which addresses the consequences of failing to obey an order to provide or permit discovery.

When a party "fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just." TENN. R. CIV. P. 37.02. Rule 37.02 provides illustrative sanctions, including "rendering a judgment by default against the disobedient party," "striking out pleadings," and "prohibiting that party from introducing designated matters in evidence." *Id.* 37.02(B)-(C); *see Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998) (holding a default judgment was an appropriate sanction for defendants who repeatedly failed to comply with discovery orders); *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 713-14 (Tenn. Ct. App. 2017) (holding that striking defendant's answers and prohibiting defendant from presenting "any evidence" at a hearing were appropriate sanctions for defendant's failure to provide sufficient discovery responses). In determining an appropriate sanction for failure to comply with an order to provide or permit discovery, "[t]rial courts have wide discretion." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) (citing *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981)). A court abuses that discretion when it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Husband complains that the sanction imposed was "the highest form of sanction that can be taken against a litigant in a divorce matter and virtually assure[d] that any appearance or defense attempted by [him] at the final hearing would be in vain." He also argues that the court abused its discretion by "fail[ing] to designate any facts, claims, defenses, or matters in evidence to be excluded from the parties' final divorce hearing based upon [his] alleged noncompliance." *See* TENN. R. CIV. P. 37.02(A)-(B).

We discern no abuse of discretion. The sanctions imposed were of a type expressly contemplated by Tennessee Rule of Civil Procedure 37.02. True, a default is an extreme sanction. *Shahrdar*, 983 S.W.2d at 236. But a default "is appropriate 'where there has been a clear record of delay or contumacious conduct.'" *Id.* (quoting *In re Beckman*, 78 B.R. 516, 518 (M.D. Tenn. 1987)). Here, there is such a record. Husband, himself an attorney, deprived Wife of detailed financial information throughout the entirety of the divorce. For months, he failed to fully respond to discovery in the face of orders directing

him to do so. Because Husband persisted in his disobedient conduct, preventing Wife from discovering necessary evidence and prolonging the case, "the punishment fits the offense." *See Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009).

As for the limitations imposed on Husband's ability to offer proof, the trial court did fail to designate the claims or defenses that he would not be permitted to oppose or support and to designate the specific matters that would be deemed established. But Husband has failed to show how striking his pleadings or barring him from submitting evidence without designating the claims or defenses that would be foreclosed resulted in error that affected the judgment. *See* TENN. R. APP. P. 36(b). His brief on appeal is no more forthcoming on the evidence that he hoped to offer than he was in responding to discovery.

B.

Husband next argues that the trial court abused its discretion in failing to set aside the default and to alter or amend the final decree of divorce under Tennessee Rule of Civil Procedure 60.02. A court "may set aside a judgment by default in accordance with Rule 60.02" for good cause shown. TENN. R. CIV. P. 55.02. But, because the default did not resolve all claims, rights, and liabilities of the parties, Tennessee Rule of Civil Procedure 54.02, rather than Rule 60.02, applies to Husband's request for relief from the default. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 490 (Tenn. 2012); *see also Patterson v. SunTrust Bank*, 328 S.W.3d 505, 511 (Tenn. Ct. App. 2010) (interpreting Rule 55.02 as applying to final judgments). Husband sought to alter or amend the final decree of divorce within thirty days of its entry, so Rule 59 applies to his request to alter or amend. *See Discover Bank*, 363 S.W.3d at 489. Like under Rule 60, we apply an abuse of discretion standard to a trial court's ruling under either Rule 54.02 or Rule 59. *Id.* at 487.

Husband's request for relief from the default is seemingly two-fold. First, he argues an injustice occurred because default was too severe a sanction. Second, he argues that he did not receive adequate notice of two orders that preceded the default.[3] We have already addressed the sanction imposed for Husband's failure to participate in discovery. So we focus on the second ground for relief: inadequate notice of the orders. By separate orders, the trial court set a hearing on Wife's motion to compel responses to discovery and for an

---

[3] Husband also complains that he was never served with a summons for Wife's amended complaint for divorce. Apparently, Husband first made this claim in his motion to set aside the order of default and to alter or amend the final decree. Wife responds that no summons was required for the amended complaint and that it was served by mail on Husband's counsel. *See* TENN. R. CIV. P. 4.01. Alternatively, she argues that Husband waived any issues with service. *See Goodner v. Sass*, No. E2000-00837-COA-R3-CV, 2001 WL 35969, at *1 (Tenn. Ct. App. Jan. 16, 2001) (recognizing that "defects in process, service of process, and return of service may be waived" if not properly raised). The trial court determined that Husband had failed to prove lack of service of process. We interpret that ruling as a determination that a new summons for the amended complaint was unnecessary.

accounting and partially granted the relief she requested. Both orders, which were prepared by counsel for Wife, have certificates of service that certify service only on an attorney that had not entered an appearance on behalf of Husband. Husband contends that should be sufficient to set aside the default.

We discern no abuse of discretion in the court's decision not to set aside the default. The court's order granting the default specifically finds that Husband did not file a response to Wife's motion for a default and for discovery sanctions. It also finds that Husband "failed to appear at the [second] hearing despite being provided notice." Husband offers nothing to rebut those findings. Instead, he offers evidence that orders leading up to default were misdirected. He does not deny that the orders were ultimately received or that he appeared at the first hearing on the motion to default.

Husband presents a similar rationale for altering or amending the final decree of divorce under Rule 59.04. He contends that he lacked notice of the final hearing. But he also complains "Wife admitted evidence into the record without proper authenticity or foundation, such as electronic mails, texts, hearsay statements, and other information." He submits the "statements were false and defamatory and involve[d] perjured testimony of Wife."

A Rule 59.04 motion "provide[s] the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). It may "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* At best, Husband's arguments might fit under the umbrella of seeking "to correct a clear error of law or to prevent injustice."

We again discern no abuse of discretion on the part of the trial court. As for Husband's contention that he lacked notice of the final hearing, the evidence does not preponderate against the trial court's finding that he had notice of the hearing. Husband was unrepresented during a period in which Wife filed several motions to set hearing dates. The record demonstrates that Wife's counsel sent these motions to Husband's last-known, on-file addresses as well as two email addresses. *See* TENN. R. CIV. P. 5.02(2)(a) (authorizing "[s]ervice . . . on a party . . . by emailing the person the document in Adobe PDF to the recipient's email address"). The court's order setting the hearing was sent in the same fashion, except it only used one of the two email addresses. The email address used for service of the court order setting the final hearing for May 5, 2022, was the same email address Husband used for a message to Wife's counsel—less than two weeks before the final hearing—in which Husband threatened to "object to the [final] hearing proceeding on May 5th."

As for the evidence Wife offered at the final hearing, error may not be predicated on an evidentiary ruling "unless a substantial right of the party is affected, and . . . [if] . . .

the ruling is one admitting evidence, a timely objection . . . appears of record, stating the specific ground of objection." TENN. R. EVID. 103(a). Although Husband was prohibited from introducing evidence at the final hearing, as the trial court noted, he "had the right to challenge [Wife's evidence]" if he desired. Instead, he elected not to appear. Thus, he cannot raise the admission of evidence as error. *See Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 907 n.10 (Tenn. 1996) (observing that an objection at the time of admission is required "in order to preserve its introduction as error").

## C.

Husband's final issue is whether the trial court abused its discretion by entering a parenting plan without considering the best interest factors or maximizing his parenting time. *See* Tenn. Code Ann. § 36-6-106(a) (2021). Although a trial court has broad discretion in fashioning parenting arrangements, the touchstone is always the best interest of the child. *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013); Tenn. Code Ann. § 36-6-106(a). The plan should "permit[] both parents to enjoy the maximum participation possible in the life of the child consistent with the [best interest] factors." Tenn. Code Ann. § 36-6-106(a).

In the final decree of divorce, the trial court determined that Wife's proposed plan, which granted her 365 days of residential parenting time, "[wa]s in the best interest of the minor children and shall be made an order of the Court." In making its finding that Wife's proposed plan was in the children's best interest, the court did not reference any of the statutory best interest factors. We agree with Husband that the court's findings concerning the children's best interest are insufficient.

When faced with insufficient findings of fact, an appellate court has options. One option is to vacate the decision and remand so that the trial court can make specific findings of fact and conclusions of law. *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). Another is to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Id.* The appropriate option depends on the circumstances of the case, including the adequacy of the record, the fact-intensive nature of the inquiry, and whether witness credibility determinations must be made. *See id.* (declining to conduct a de novo review because credibility determinations were necessary to resolve factual disputes); *Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *26 (Tenn. Ct. App. July 13, 2012) (stating that independent review is appropriate when the case involves a legal issue or the court's decision is "readily ascertainable").

Here, we conclude the appropriate option is to conduct a de novo review of the record to determine where the preponderance of the evidence lies regarding the children's best interest. The best interest inquiry is fact intensive. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). However, the record is adequate in that a transcript is

8

available, and the proof consists of the uncontested testimony of a single witness and several exhibits. Under the circumstances, we can determine how the offered proof related to each of the applicable statutory best-interest factors.

Factor (1) considers "[t]he strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities." Tenn. Code Ann. § 36-6-106(a)(1). Wife testified that Husband had "very sporadic" contact with the children after he left the marital home in 2017. He did not see the children in person for over a year after he moved to Oklahoma. Even though he filed a motion to establish holiday parenting time one year, he "never showed up" to exercise that visitation. He had limited contact with the children even when they visited Husband's family in Oklahoma.

Factor (2) examines each parent's "willingness and ability . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents." *Id.* § 36-6-106(a)(2). Wife took the children to visit Husband and his parents in Oklahoma several times after Husband moved. She "always allowed [Husband] to see [the children] at his parents' home." By contrast, Husband sent Wife numerous derogatory and harassing text messages. He often included insulting messages along with his family support payments that he made via a digital wallet. Wife also provided evidence of text messages between Husband and one of the children in which Husband wrote, "Your mommy is being very mean to Daddy. She wants to put Daddy in jail." At the end of that conversation, Husband instructed the child to "delete . . . text messages so mommy does not see them."

Factor (4) looks to "[t]he disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care." *Id.* § 36-6-106(a)(4). Throughout the litigation, Father often failed to pay family support. He owed money for the children's counseling and school. He let the children's health care lapse, forcing Wife to put them on TennCare for several years. Eventually, the children were forced to move from their home because Husband did not pay the mortgage. Wife testified that the children had "been in three different schools in three years" due to Husband's behavior.

Factor (5) assesses "[t]he degree to which a parent has been the primary caregiver." *Id.* § 36-6-106(a)(5). Wife testified that, from the beginning of the marriage, Husband "was always traveling three or four days a week." She "was used to managing these kids on [her] own." After Wife filed for divorce, Husband spent less time with the children, and his time with them markedly decreased after he moved to Oklahoma.

Factor (6) examines "[t]he love, affection, and emotional ties existing between each parent and the child." *Id.* § 36-6-106(a)(6). Wife testified that, at the time of trial, the only contact Husband had with the children was through unpredictable and inconsistent

FaceTime calls. The court found that Husband "declined the opportunity to spend time with his children on numerous occasions."

Factor (7) considers "[t]he emotional needs and developmental level of the child[ren]." *Id.* § 36-6-106(a)(7). At the final hearing, the oldest child was transitioning to middle school, and the younger two were in elementary school. Two of the children had special educational needs. But Husband's failure to pay tuition at a school that served the oldest child's needs forced a move to another school with more than twice as many students per class. According to Wife, all three children needed tutoring due to "the transitions, the change in schools, [and the] COVID [pandemic]."

Factor (8) looks at the "moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child." *Id.* § 36-6-106(a)(8). During the divorce proceedings, Husband threatened to commit suicide. The court found these suicidal threats "were insincere" and made "in an effort to avoid be held in contempt." For her part, Wife testified that she had "asked [Husband] to get mental health treatment for [her] to feel more comfortable about establishing parenting time in the future."

Factor (10) focuses on "continuity in the [children's] li[ves] and the length of time the child[ren] ha[ve] lived in a stable, satisfactory environment." *Id.* § 36-6-106(a)(10). The children lived in Tennessee before and during the divorce proceedings. But Husband unilaterally moved to Oklahoma without notice to Wife and the children. And the children were forced to move from the marital home because Husband failed to comply with orders directing him to pay the mortgage and provide family support. Wife testified that she had been able to rent a home from a family member, and she planned to remain within the children's school district after the rental term ended.

Factor (11) accounts for "[e]vidence of physical or emotional abuse" committed by a parent. *Id.* § 36-6-106(a)(11). The court found that Husband "communicate[d] with Wife in a highly inappropriate and harassing manner." He "ha[d] threatened Wife" and made statements about owning a gun. He regularly used derogatory language and slurs against her. Wife testified that Husband routinely threatened to withhold money for housing and support or to cancel or remove her as beneficiary of his life insurance policies.

Factor (12) reviews "[t]he character and behavior of any other person who resides in or frequents the home of a parent." *Id.* § 36-6-106(a)(12). Wife testified that, for the past two years, she and the children had been living near her family, and her brothers "ha[d] stepped in as good father figures."

Finally, Factor (14) looks at "[e]ach parent's employment schedule." *Id.* § 36-6-106(a)(14). Based on Husband's work history and internet presence, Wife believed Husband was currently working for a successful business for which he was founder and managing partner. Wife was working as a special education assistant and taking college

10

classes to get her teaching license. The job allowed her "to just be with [the children] as much as possible, to do their after-school activities, their tutoring."

After thorough review, we conclude that the parenting plan adopted by the court falls within the "spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *See Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). While "maximum participation" of both parents in their children's lives is the goal when fashioning a parenting plan, the court's primary concern is the children's best interest. *Hunter v. Cooper*, No. M2022-01050-COA-R3-CV, 2024 WL 4615608, at *5 (Tenn. Ct. App. Oct. 30, 2024). Here, the plan is consistent with the children's best interest.

### D.

Wife seeks an award of attorney's fees for a frivolous appeal under Tennessee Code Annotated § 27-1-122 (2017). A frivolous appeal is one that is "utterly devoid of merit," *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or has "no reasonable chance of success." *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977). Because Husband presented a nonfrivolous argument that the trial court erred in fashioning the parenting plan, we decline to award Wife attorney's fees.

### III.

We conclude that the trial court did not abuse its discretion in sanctioning Husband or in declining to set aside the default or the final decree of divorce. We also conclude that there was no abuse of discretion in the adoption of the Wife's proposed parenting plan. So we affirm.

            s/ W. Neal McBrayer
            W. NEAL MCBRAYER, JUDGE